UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LYZETTE S.,[1]

      **Plaintiff,**

**v.**                               **No. 2:20-cv-645**

**KILOLO KIJAKAZI,[2]**
*Acting Commissioner of*
*Social Security,*

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Lyzette S. ("Plaintiff") seeks judicial review of the Acting Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Plaintiff claims ALJ's findings were unsupported by substantial evidence and that the ALJ failed to give appropriate weight to the evidence in finding she was not disabled. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes that the ALJ did not err in evaluating the medical evidence, and thus recommends affirming the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

## I.    PROCEDURAL BACKGROUND

Plaintiff protectively filed DIB under Title II and SSI under Title XVI of the Social Security Act on August 30, 2018, alleging an onset date of July 1, 2016. (R. 17). She alleged disability due to right shoulder instability. (R. 255). The Social Security Administration ("SSA") denied her application initially and again upon reconsideration. (R. 17, 146, 157). In October 2019, Plaintiff requested an administrative hearing, (R. 171), which took place on July 15, 2020, via telephone, (R. 31). Counsel represented Plaintiff at the hearing, and a vocational expert testified. (R. 17). During her hearing, Plaintiff amended her alleged onset date, seeking a closed period of disability from January 1, 2018, to August 7, 2019. (R. 43).

On July 24, 2020, the ALJ denied Plaintiff's claims for DIB and SSI, finding she was not disabled during the period alleged. (R. 25). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Further, the ALJ determined that Plaintiff's residual functional capacity ("RFC") enabled her to perform light work with some limitations, id., and jobs existed in significant numbers in the national economy that could accommodate Plaintiff's limitations, (R. 24-25). Thus, Plaintiff was not disabled within the meaning of the Act and was ineligible for benefits. (R. 25). The Appeals Council declined to review the ALJ's findings, making the Commissioner's decision final. (R. at 1).

On December 26, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Compl. ¶ 4 (ECF No. 1, at 1). Plaintiff contends that this case should be reversed or remanded because the ALJ erred in assigning an RFC in which she could occasionally reach from waist-to-shoulder level. Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br.") (ECF No. 13, at 7). Plaintiff primarily claims that the record

"objectively" indicates that Plaintiff's shoulder condition prevented her from reaching in any direction according to SSA policy. Id. at 7-9. Further, Plaintiff argues the ALJ failed to define a limitation to "non-production rate pace" when describing Plaintiff's RFC, thus impeding judicial review. Id. at 9-10. In response, the Commissioner maintains that the ALJ's determination is supported by substantial evidence and Plaintiff's claims rest on non-authoritative recommendations that do not reflect current policy. Def.'s Mem. Supp. Cross-Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 15, at 10, 13). Moreover, the Commissioner argues that the ALJ's use of "non-production rate" was adequately defined by the context of Plaintiff's claimed disability. Id. at 14-16. This case is now before the court to resolve the parties' cross-motions for summary judgment. (ECF Nos. 12, 14).

## II.   FACTUAL BACKGROUND

Plaintiff was born on November 2, 1973, and was forty-two years old at the time of her alleged onset date. (R. 24). She completed high school. (R. 23). Plaintiff worked as a daycare center director from August 2005 to March 2013, and she worked as a sales associate at a car dealership from November 2015 to June 2016. (R. 244).

### A.   Plaintiff's Medical Visits and History of Right Shoulder Instability

Plaintiff has a documented history of right shoulder instability spanning over twenty years. (R. 333). Plaintiff underwent six surgeries prior to her alleged onset date, with her most recent surgery before alleged onset occurring in 2005. (R. 333, 390). On April 20, 2018, Plaintiff visited Dr. Geoffrey Wright, M.D., for her worsening shoulder pain. (R. 401). After measuring Plaintiff's extension and abduction, Dr. Wright recommended Plaintiff visit Dr. Anthony Bevilacqua, D.O., to discuss shoulder replacement. Id.

On April 24, 2018, Plaintiff visited Dr. Bevilacqua for a surgical consult. (R. 395). Bevilacqua noted that Plaintiff had experienced "good durable benefit" from her previous surgery "until recently." Id. However, Plaintiff could not position her right arm away from her body without assistance from her left. Id. An MRI revealed mild longitudinal splitting of superior tendon fibers, with an otherwise intact rotator cuff, and mildly atrophic muscles; concentric labral avulsion and/or maceration with advanced bone-on-bone glenohumeral chondromalacia; and large capacity joint space containing extensive osteochondral debris. (R. 364).

In June 2018, Dr. Bevilacqua advised Plaintiff that limited intervention would likely reduce pain and prolong the need for shoulder replacement; however, replacement would eventually be needed to improve function. (R. 393). In July 2018, Plaintiff underwent surgical intervention consisting of right shoulder arthroscopic labral and rotator cuff debridements, extensive synovectomy, and loose body extractions. (R. 385). In August 2018, Plaintiff returned for a follow-up appointment, reporting returned preoperative pain in her shoulder. Id. Dr. Bevilacqua wrote that Plaintiff "was doing great" until the week prior. Id. In October 2018, Plaintiff stated that her pain was sometimes worse than it had been before surgery. (R. 511). Dr. Bevilacqua ordered an MRI to evaluate for total shoulder replacement. Id. The MRI exhibited end-stage right shoulder arthropathy. (R. 529). In December 2018, Plaintiff's pain was unimproved, and Dr. Bevilacqua recommended total shoulder replacement. (R. 516). On March 1, 2019, Plaintiff underwent shoulder replacement surgery. (R. 421-23, 433). At discharge, Plaintiff was advised to avoid lifting, pushing, and pulling for eight weeks. (R. 434).

Plaintiff's condition progressively improved after surgery. On March 25, 2019, Plaintiff was "overall doing well" but had some pain. (R. 523). In April, Plaintiff reported that her stiffness and soreness was improving with physical therapy. (R. 540). By June, Plaintiff reported only

minor pain when finishing therapy, (R. 542), and by August, Plaintiff's "range of motion and strength ha[d] notably improved," and she more effectively completed daily activities, (R. 544).

## B.     Plaintiff's Range of Motion

Prior to Plaintiff's July 2018 surgery, Plaintiff could achieve forward extension ranging from sixty to seventy degrees and abduction of forty degrees. (R. 396, 400).  She scored 5/5 internal rotation strength and 3/5 external rotation strength. (R. 396).  In August 2018, Plaintiff scored 3/5 neutral external rotation strength and 5/5 on the Jobe and speed tests with mild weakness. (R. 385).  By October, Plaintiff could achieve full range of motion with her right shoulder, though with notable dysrhythmia. (R. 511).  In December, Plaintiff demonstrated identical range of motion but was limited to supple motion passively to shoulder level. (R. 516).

Before her shoulder replacement surgery in March 2019, Plaintiff's active range of motion was 90/95/25 and passive range of motion was 95/100/30. (R. 423).  In April, Plaintiff's shoulder reached a forward elevation of forty degrees and passive elevation of ninety degrees. (R. 540).  By the end of the relevant period, Plaintiff's range of motion was "notably improved," and she could achieve forward elevation of 160 degrees, abduction of 135 degrees, and external rotation of forty degrees. (R. at 544).

## C.     State Agency Medical Evaluations

Gene Godwin, M.D., and Joseph Duckwall, M.D., state agency medical consultants, reviewed Plaintiff's medical records and made substantially similar findings. (R. 98, 126).  In December 2018, Dr. Godwin found that Plaintiff was unlimited in her ability to climb stairs, balance, stoop, kneel, and crouch. (R. 94).  Plaintiff could occasionally climb ladders and crawl. Id.  Plaintiff was able to lift or carry up to ten pounds frequently, id., though she was occasionally limited in her ability to reach overhead, in front, and laterally, (R. 95).  Based upon these findings,

Dr. Godwin determined that Plaintiff demonstrated the ability to complete light work. (R. 97). Considering factors such as medical history, age, education, Dr. Godwin concluded that Plaintiff was not disabled and could adjust to other work. (R. 98). On September 3, 2019, Dr. Duckwall came to identical conclusions, finding Plaintiff was not disabled. (R. 125-26).

**D.      Plaintiff's Subjective Reports**

Plaintiff completed a function report on September 22, 2018, attesting to her limitations. (R. 279). Plaintiff reported she could frequently perform household chores, such as loading the dishwasher, spraying the shower and tub, emptying the bathroom trash, and getting the mail. (R. 274). Plaintiff could drive automatic transmission vehicles and shop for groceries on a weekly basis without accompaniment. (R. 275). However, Plaintiff typically needed assistance on larger grocery trips. (R. 276). Plaintiff could wear clothing with front buttons and zippers. (R. 273). In describing her lifting capabilities, Plaintiff wrote, "reaching is limited (no overhead)." (R. 277). Plaintiff also testified before the ALJ that because of her limited range of motion, she needed assistance placing her arm into shirt sleeves and washing her hair. (R. 56).

**E.      Hearing Testimony from the Vocational Expert**

The ALJ's hypothetical for the vocational expert ("VE") posited a person of the same age, education, and work experience as Plaintiff with the following limitations:

> [S]he could perform up to and including a light level of activities as defined by the regulations. Noting that her right arm is limited to a sedentary level of exertion with the following additional maximum limitations or capabilities. She could only occasionally climb ladders. She could never crawl. She should have no more than frequent exposure to workplace hazards, such as unprotected heights or dangerous machinery. She could frequently, but not always handle objects. That's the gross manipulation with the right hand. And she's right arm dominant. She could only occasionally reach waist-to-shoulder level with the right arm. She should never be required to reach overhead with the right arm. I would also limit her to none [sic] production-paced tasks as to tempo and capacity.

(R. 63). Although a person with such limitations could not perform any of Plaintiff's past relevant work, the VE testified that jobs would be available to such a person. Id. The VE identified an usher (DOT 344.677-014) with 12,000 jobs nationally; a counter clerk (DOT 249.366-010) with 8,500 jobs nationally; and a furniture rental consultant (DOT 295.357-018) with 25,000 jobs nationally. (R. 63-64).

On cross-examination, Plaintiff's counsel asked the VE whether reducing Plaintiff's ability to reach from "occasional" (thirty-three percent of the workday) to "rarely" (ten percent of the workday) would have an adverse impact on the availability of light work in the national economy. (R. 65). The VE concluded this limitation modification eliminated all jobs available in the national economy that would accommodate Plaintiff's limitations. Id.

## III.    STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable

7

minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

Plaintiff claims that the ALJ's conclusion that Plaintiff was not disabled is unsupported by substantial evidence. See Pl.'s Br. (ECF No. 13, at 7). Specifically, Plaintiff maintains that the ALJ erred in finding Plaintiff could occasionally reach from waist-to-shoulder level with her right arm, and that the ALJ's alleged failure to define "non-production rate pace" renders the decision erroneous. Id. at 9. As explained below, I find no error in the ALJ's analysis of the evidence, including the ALJ's findings that Plaintiff could occasionally reach from waist-to-shoulder level. Accordingly, I conclude that remand is not warranted and therefore recommend that the court affirm the Commissioner's decision.

## A.    Framework for SSA Disability Evaluation.

Title XVI of the Act provides SSI benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. 1382(a)). As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A)); accord 20 C.F.R. § 416.905(a). An impairment renders an individual disabled only if it is so severe

as to prevent the person from engaging in his or her prior work or any other substantial gainful

activity that exists in the national economy. See § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination.

20 C.F.R. § 416.920(a)(4).  Specifically, the regulations direct the ALJ to answer the following

five questions:

1.    Is the individual involved in substantial gainful activity?

2.    Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3.    Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4.    Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.    Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five,

means the claimant is not disabled.  An affirmative answer to questions three or five establishes

disability. The claimant bears the burden of proof during the first four steps.  If the analysis reaches

step five, the burden shifts to the Commissioner to show that other work suitable to the claimant

is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly

v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled.  20

C.F.R. §§ 416.920(a)(3); 416.920b.  This includes "(1) the objective medical facts; (2) the

diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective

evidence of pain and disability; and (4) the claimant's educational background, work history, and

present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th

Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date until her hearing. (R. 19). At step two, the ALJ determined Plaintiff had a severe impairment of right shoulder instability. Id. At step three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 20). The ALJ developed a description of Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the residual capacity to perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) except she can occasionally climb ladders and crawl. She can tolerate no more than frequent exposure to extreme cold. She can tolerate no more than occasional exposure to workplace hazards such as unprotected heights and dangerous machinery. She can occasionally reach waist-to-shoulder level with the right (dominant) upper extremity. She is unable to reach overhead with the right upper extremity. She can frequently handle objects (i.e., gross manipulation) with the right hand. She is limited to nonproduction-paced tasks as to tempo and capacity.

Id. At step four, the ALJ determined that Plaintiff's limitations precluded her from performing her past relevant work. (R. 23). At step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 24-25). Consequently, Plaintiff was not disabled during the relevant period, and her claim was denied. (R. 25).

**C.      The ALJ's Finding that Plaintiff Could Occasionally Reach from Waist-to-Shoulder Level is Supported by Substantial Evidence.**

Plaintiff first argues that the ALJ erred in assigning an RFC in which she could occasionally reach from waist-to-shoulder level. See Pl.'s Br. (ECF No. 13, at 9). Plaintiff claims that her reaching capacity should be reduced from "occasional" to "rare" in accordance with SSA policy.

Id. The RFC assesses how the claimant's "physical and mental limitations . . . affect what [he or she] can do in a work setting." 20 C.F.R. § 416.945(a)(1). In fashioning the RFC, the ALJ will consider "all of the relevant medical and other evidence." § 416.945(a)(3); see also SSR 9-8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on all of the relevant evidence in the case record[.]" (emphasis in original)). Generally, claimants are responsible for producing evidence at this stage. § 416.945(a)(3).

Plaintiff's theory rests on VE testimony concluding rare reaching ability would leave no jobs available in the national economy to accommodate Plaintiff's limitations. See Pl.'s Br. (ECF No. 13, at 9); see also (R. 65). Plaintiff relies on the definition of "reaching" providing by the Occupational Information Development Panel ("OIDAP"). Pl.'s Br. (ECF No. 13, at 7). The OIDAP defines reaching as "[e]xtending [the] arms and hands away from the body in any direction. Shoulder angle must be forty-five degrees away from the body to be considered reaching." Appendix B, Report of the Physical Demands Subcommittee, SSA (Sept. 1, 2009).

Plaintiff contends that the medical record supports she was unable to meet the OIDAP's minimum abduction requirements. See Pl.'s Br. (ECF No. 13, at 7). Thus, her reaching capacity should be reduced accordingly. Id. at 7-8. However, the SSA need not simply comply with the OIDAP's suggested definition in fashioning RFC limits. The OIDAP was a "discretionary panel" providing "independent advice and recommendations" to assist the SSA's development of an occupational information system and does not reflect current SSA policies. OIDAP, SSA, https://www.ssa.gov/oidap/ (last visited Nov. 16, 2021). Under Social Security Ruling ("SSR") 85-15, the relevant definition of "reaching" is described as "extending the hands and arms in any direction." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

11

There is substantial evidence suggesting Plaintiff could reach under SSR 85-15, and in particular as described by the ALJ's hypothetical. Here, the ALJ fully considered Plaintiff's extensive medical history of right shoulder instability. Plaintiff's first surgery in July 2018 resulted in significant improvement to her range of motion. (R. 385, 511). Plaintiff's surgeon reported she "was doing great" until her visit in August 2018. (R. 385). Physical therapy following her March 2019 surgery improved her symptoms and range of motion. (R. 540). From April 2019 to August 2019, Plaintiff consistently achieved improved range of motion and lessened pain. (R. 540-44). Overall, there is substantial evidence supporting the ALJ's determination that Plaintiff could occasionally reach from waist to shoulder level. Moreover, no physicians attested to the contrary. (R. 23) ("[N]one of the claimant's treatment providers . . . opin[ed] that [Plaintiff] is unable to perform the activities set out in the [RFC.]").

Further, the ALJ considered Plaintiff's subjective reports of pain and limitations. (R. 21-22). In Plaintiff's function report, filed in September 2018 before her shoulder replacement surgery, Plaintiff had the opportunity to identify limitations regarding shoulder-level elevation but failed to do so. (R. 279). Her report coincides with the period following her initial surgery in which she experienced improved range of motion. (R. 279, 511). Notably, Plaintiff herself described her limitations as being unable to reach fully overhead—"reaching is limited (no overhead)"—and not as preventing shoulder-level elevation. (R. 277). She testified during her hearing that she had difficulty placing her arm into shirt sleeves and that washing her hair was "a big thing" with which she needed assistance. (R. 56). However, she could also complete a variety of household chores that require at least some reaching, including loading the dishwasher, spraying the shower and tub, emptying the bathroom trash, and getting the mail. (R. 274). Plaintiff could

12

also drive automatic transmission vehicles. (R. 275). Given these abilities, there is ample evidence supporting the ALJ's conclusion.

Finally, the ALJ considered assessments provided by state agency medical consultants conducted nearly nine months apart. (R. 22, 98, 126). Both experts came to substantially identical conclusions regarding Plaintiff's RFC. (R. 98, 126). In particular, they both found Plaintiff could reach to shoulder level occasionally, (R. 95, 123), and that her "condition [wa]s not severe enough to keep her from working," (R. 98, 126). Dr. Duckwall noted that Plaintiff "self-report[ed] better usage of her [right] arm/shoulder and compliance with [physical therapy]." (R. 121). Plaintiff did not provide contradictory medical assessments. (R. 23).

Plaintiff argues the objective evidence itself creates an inherent finding of error. Pl.'s Br. (ECF No. 13, at 8). I disagree. This appeal is not an opportunity to relitigate the case. See Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. Plaintiff argues that her various ranges of motion "confirm" her disability. Id. at 8. For example, in April 2019, Plaintiff's shoulder could only achieve a forward elevation of forty degrees and passive elevation of ninety degrees. (R. 540). However, there is sufficient evidence identified by the ALJ to suggest that Plaintiff could reach within the meaning of the SSA's definition. As exhibited above, the ALJ carefully considered the entire range of medical and subjective evidence. Because the Commissioner's findings are thus supported by substantial evidence, they must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 848, 868 (4th Cir. 2017).

**D.    The ALJ Adequately Defined "Non-Production Rate Pace" Because Plaintiff's Claimed Limitations Provide Sufficient Context Regarding the Term and Plaintiff's Case is Distinguishable from Applicable Fourth Circuit Precedent in Thomas v. Berryhill and Perry v. Berryhill.**

Plaintiff's next argument alleges the ALJ did not adequately define "non-production rate pace," which she maintains is not harmless error because time off-task would eliminate jobs

available in the national economy. Pl.'s Br. (ECF No. 13, at 9-10). In crafting an RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion . . . ." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8, 1996 WL 362207 (July 2, 1996)). In addition, the ALJ must provide evidence supporting his determination and "build an accurate and logical bridge" to his or her conclusion. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). Without this explanation, the court must "guess about how the ALJ arrived at his conclusions" and cannot meaningfully review them. Mascio, 780 F.3d at 637. However, Plaintiff does not have mental impairments, making her case readily distinguishable from those she has cited, and there is sufficient context to permit meaningful review of this limitation.

### 1.    Plaintiff's Only Limitation Is Physical, Not Mental.

Plaintiff argues that the ALJ's use of the phrase "non-production rate pace" in Plaintiff's RFC is "insufficient" under the Fourth Circuit's precedent in Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), and Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019). Pl.'s Br. (ECF No. 13, at 9). Though both cases involved similar terms at issue, their outcomes were contingent upon the involvement of mental impairments. In Thomas, the Court remanded because the ALJ failed to produce explicit conclusions regarding Thomas's mental impairments. Thomas, 916 F.3d at 312. The ALJ utilized "production rate" and "demand pace" in defining Thomas's RFC but did not establish the terms' meaning in relation to the plaintiff's mental limitations. Id. These factors combined rendered meaningful appellate review "difficult, if not impossible," because the ALJ had provided "too little logical explanation." Id.

Similarly, Perry possessed mental and physical limitations that went unaddressed by the ALJ. Perry, 765 F. App'x at 870. In particular, the ALJ had not explained how limiting the plaintiff to a "non-production oriented work setting" responded to the plaintiff's mental

14

impairments. Id. at 871. The lack of explanation was especially problematic because the plaintiff had limitations in concentration, persistence, and pace. Id. at 872. As a result, the court could not review the ALJ's decision when it was "uncertain as to what [she] intended." Id. at 873 (quoting Mascio, 780 F.3d at 636-37 (alteration in original)).

Unlike in Perry and Thomas, Plaintiff's RFC is distinguishable because she does not possess a mental limitation. In those cases, the ALJ did not readily identify which limitation its RFC was meant to address or describe how the plaintiff's mental limitations were adequately accounted for in its assignment of a non-production pace. See Thomas, 916 F. 3d at 312; Perry, 765 F. App'x at 871. Here, the ALJ intended to address Plaintiff's physical limitations because her shoulder limitation is the only impairment she has alleged. See (R. 19). Furthermore, by their nature, mental impairments require more explanation than physical impairments to build the requisite "logical bridge" between the ALJ's reasoning and conclusion. Woods, 888 F.3d at 694 (quoting Monroe, 826 F.3d at 189); see also Timothy M. v. Saul, No. 19-223419-2234, 2020 WL 7074632 at *2 (D. Md. Dec 3, 2020) (finding the ALJ had not adequately defined "fixed production pace" in describing the plaintiff's limitations resulting from mental health conditions); Richard W. v. Saul, No. 19-2316, 2020 WL 4042853 at *2 (D. Md. Jul. 17, 2020) (finding the ALJ's failure to explain "production rate-pace" in relation to the plaintiff's mental impairment warranted remand); Kane v. Saul, No. 3:18-cv-746, 2020 WL 130134 at *48-49 (E.D. Va. Jan. 10, 2020) (remanding because "non-production oriented setting" was not adequately explained in relation to the plaintiff's mental impairments). Cf. Miguelina S. v. Saul, No. X, 2020 U.S. LEXIS 91795, at *25 (E.D. Va. May 26, 2020) (finding Mascio satisfied when ALJ discussed record evidence of the plaintiff's physical impairment). Here, Plaintiff has alleged only a physical limitation, and thus

the ALJ manifestly intended to limit the exertion of Plaintiff's right arm to address her impairment. See (R. 19).

### 2.   The Context, Including the ALJ's Descriptors and Sufficient Record Evidence, Supports the RFC's Limitation to Non-Production Rate Tasks.

The outcomes in Perry and Thomas were also contingent upon the ALJ's lack of explanation. Perry, 765 F. App'x at 873; Thomas, 916 F.3d at 311. However, the ALJ here provided context sufficient to permit evaluation of whether the RFC adequately addressed Plaintiff's limitations. The Fourth Circuit has recognized that context matters, distinguishing its Perry holding from Sizemore v. Berryhill, in which the ALJ permissibly used "non-production jobs" because "additional context" was provided to elaborate on the term. Perry, 765 F. App'x at 872 n.1 (citing Sizemore v. Berryhill, 878 F.3d 72, 79-81 (4th Cir. 2017)). In this case, context supports the ALJ's conclusion that Plaintiff could perform only non-production rate tasks.

First, the ALJ provided descriptors ("as to tempo and capacity") which allow for a sufficient understanding of the term in the context of Plaintiff's physical limitations. (R. 20). The presence of "descriptors" can account for limitations. Perry, 765 F. App'x at 872 n.1 ("[D]escriptors help[] to explain the restriction intended by the ALJ, and allow[] [the court] to evaluate whether that restriction adequately accounted for the claimant's limitations." (citing Sizemore, 878 F.3d at 81)). Plaintiff argues that the descriptor here is not a definition but rather a "pleonasm." Pl.'s Br. (ECF No. 13, at 10). However, immediately before this description, the ALJ wrote that Plaintiff "is unable to reach overhead with the right upper extremity. She can frequently handle objects (i.e., gross manipulation) with the right hand," explaining why this limitation is appropriate.   (R. 20). Tempo and capacity are adequate descriptors showing the ALJ's concern about pain Plaintiff might experience if required to reach repeatedly from waist to shoulder level in order to complete production-paced tasks.

Furthermore, because Plaintiff is limited in her ability to reach, it is clear the ALJ intended to describe the lesser frequency and volume at which Plaintiff can perform tasks. The ALJ identified the limitations he considered before assigning Plaintiff's RFC, noting that he found Plaintiff was "best suited to work that does not involve any overhead reaching, given the reduced abduction and forward elevation on physical exams." (R. 22). He also reviewed the surgeon's restrictions on Plaintiff's shoulder movement after the replacement. (R. 23). Additional evidence available to the ALJ confirms Plaintiff's shoulder limitation, including her September 2018 function report, in which Plaintiff reported that while dressing, she was "limited to front buttons" and "zippers," (R. 273), and that she could not drive a manual transmission vehicle, (R. 275). She also stated that she could no longer do anything "overhead or with repetitive motion," which goes directly to the instant limitation. (R. 273). Lastly, there is extensive evidence regarding Plaintiff's impacted range of motion in her medical records. See, e.g., (R. at 396, 400, 423, 511, 516, 540, 544). Therefore, evidence of Plaintiff's reaching limitation shows that the ALJ adequately explained his reasoning in concluding Plaintiff was limited to non-production rate tasks as to tempo and capacity.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 14), DENY Plaintiff's Motion for Summary Judgment, (ECF No. 12), and AFFIRM the Commissioner's finding of no disability.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 19, 2021